# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA

**KEVIN B. LOCKHART,**

    Petitioner,

v.                                                                               **Civil Action No. 5:15cv24**
                                                                                         **(Judge Stamp)**

**C. WILLIAMS, Warden, FCI Gilmer,**

    Respondent.

## REPORT AND RECOMMENDATION

On February 23, 2015, the *pro se* petitioner, Kevin B. Lockhart ("Lockhart"), an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, initiated this case by filing a petition pursuant to 28 U.S.C. §2241 and paid the filing fee. On February 24, 2015, the undersigned reviewed the substance of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On March 24, 2015, the respondent filed a Response together with a Motion to Dismiss. On March 25, 2015, a Roseboro Notice was issued, and on April 17, 2015, the petitioner filed his response. On November 5, 2015, petitioner filed a Motion for Order of Summary Judgment. The respondent filed a Response in Opposition on November 6, 2015.

## I. Facts[1]

On February 28, 1997, Petitioner was arrested by the State of Rhode Island for conspiracy to violate the Controlled Substances Act. On March 3, 1997, criminal complaints were filed against Lockhart and a co-defendant in United States District Court for the District of Rhode Island. An indictment was returned on March 12, 1997[2], charging Lockhart with two counts: conspiracy to

---

[1] The undersigned obtained the pertinent facts from review of the petitioner's underlying criminal case, available on PACER. See 1:97cr24-2 (U.S. District Court – District of Rhode Island).

1

possess with intent to distribute cocaine, and attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. §846.

On March 20, 1998, after a jury trial, Lockhart was convicted on both counts. On October 8, 1998, Lockhart was sentenced to 360 months incarceration, to be followed by 8 years of supervised release, on each count, to run concurrently. Judgment was entered on October 13, 1998.

Petitioner appealed his conviction to the First Circuit Court of Appeals, raising grounds of insufficiency of the evidence; admission of certain statements by his co-conspirator; and prejudice from alleged "spillover evidence." On April 21, 2000, the First Circuit affirmed.

On January 24, 2001, petitioner filed a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. §2255. By Memorandum and Order entered September 21, 2001, the motion was denied. Petitioner appealed the denial of his §2255 petition. The appeal was dismissed for lack of prosecution.

On September 9, 2013, petitioner filed an "Omnibus Motion to Modify Sentence [pursuant to] 18 U.S.C. §3582(c)(1)(B) [and] Petition for Writ of Mandamus," alleging that the grand jury which returned the indictment was unconstitutionally constituted; the indictment was defective; appointed counsel was forced upon him and was ineffective; he was denied a speedy trial; appellate counsel failed to raise specific arguments; and the Honorable Ronald R. Lagueux abandoned his role as a neutral judicial officer and engaged in a fraud. On December 8, 2013, the District of Rhode Island denied that Motion for lack of jurisdiction as a successive §2255 petition.

## II. Contentions of the Parties

**The Petition**

In his rambling petition, petitioner attacks the validity of his convictions, asserting that he is unlawfully detained because he was wrongfully removed from the custody of the State of Rhode Island, in violation of the Uniform Criminal Extradition Act and the Interstate Agreement on Detainers Act. He contends that he is actually innocent of the "putative federal offenses," which are

"nonexistent offenses for which he was disabled from advancing their illegality due to his having been deprived of his rights to being informed of and provided pretransfer hearings before being removed to this [federal] custody."[2]

Petitioner contends that the reason his remedy by way of §2255 is inadequate or ineffective to test the legality of his detention is that his "previous §2255 motion, having been . . . denied, is generally invoking of §2244 Finality [sic] of determination, unless he may be deemed to meet exception as provided in §2255(h) 1 or 2 which Lockhart, as a *pro se* litigant and layman at law has not realized that the instant §2241 claim meets either of the exceptions under §2255(h) 1 or 2."[3]

As relief, petitioner requests that this Court to vacate his conviction and order his "immediate release" because "he is, in fact and by law, actually innocent of the putative federal offenses for which he is detained" because the offenses are "nonexistent."[4]

**Respondent's Motion to Dismiss**

The respondent argues that the petition should be dismissed because petitioner failed to exhaust his administrative remedies, and he fails to state a claim upon which relief can be granted.

**Petitioner's Reply**

Petitioner reiterates his arguments and attempts to refute the respondent's on the same.

**Petitioner's Motion for an Order of Summary Judgment**

In his 41-page motion with 31 pages of attachments, petitioner contends that he has now exhausted his administrative remedies and attaches copies in proof thereof. He goes on to reiterate his claims and attempting to refute the respondent's. He attaches copies of numerous newspaper articles involving other defendants charged with various crimes, arguing issues of federalism that he likens to his own case.

---

[2] Dkt.# 1 at 8.

[3] Dkt.# 1 at 9.

[4] Id.

**Respondent's Response in Opposition**

The respondent notes that the administrative remedies petitioner attached to his Motion were all filed after the respondent filed its Motion for Summary Judgment [sic]. Respondent argues that those remedies were futile at the time they were filed, because petitioner was required to exhaust his administrative remedies *prior to* the filing of his petition. Respondent reiterates its earlier argument that the petition does not merit relief under §2241.

### III. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than

4

merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

5

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to any federal law, must first exhaust all available administrative remedies. 42 U.S.C. §1997(e)(a). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 524 (2002), and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 548 U.S. at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et

6

seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Hazelton or FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under §2241 are merely judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a §2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D. W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D. W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion

or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

Here, in the response to the petition, the respondent argues that the instant §2241 petition should be dismissed because the petitioner admits he never presented any of his claims as administrative remedies prior to filing suit, as he is required to do. In reply, petitioner's argues that any administrative remedy for a claim of "judicial-only" jurisdiction would be futile, and exhaustion may be excused when the available remedy provides no opportunity for adequate relief; an administrative appeal would be futile, or if a plaintiff raises a substantial constitutional question. In his subsequent Motion for Order of Summary Judgment, petitioner contends he has now exhausted his administrative remedies and attaches copies. Respondent disagrees, arguing that petitioner's administrative remedies were futile at the time they were filed, because he had already filed suit, citing to a line of cases in support: McClung v. Shearin, 90 Fed. Appx. 444 (4th Cir. 2004) (federal prisoners must exhaust their administrative remedies prior to filing §2241 petitions); United States v. Odiana, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing §2241); United States. v. Mercado, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing §2241).

As conceded by the respondent, exhaustion in 28 U.S.C. §2241 petitions is judicially imposed and therefore, courts retain discretion to waive it when exhaustion would be futile. The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions. Nonetheless, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. §2241.

However, here, the petitioner is not challenging the execution of his sentence under 28 U.S.C. §2241, but rather, he is attacking his convictions. Accordingly, the undersigned recommends that under the circumstances presented here, exhaustion not be excused, and that this case be dismissed.

The case is due to be dismissed anyway. Petitioner's claim is that he is being unlawfully detained by the BOP, after being wrongfully removed from the custody of the State of Rhode Island, in violation of the Uniform Criminal Extradition Act and the Interstate Agreement on Detainers Act. He appears to argue that because he did not receive a pre-transfer hearing before being removed from the custody of the State of Rhode Island and taken into federal custody, he is therefore actually innocent of the "putative federal offenses," and that they are "nonexistent offenses."

Except as discussed below, a motion filed under §2241 necessarily must pertain to "an applicant's commitment or detention," rather than the imposition of a sentence. Compare 28 U.S.C. §2241 (§2241 application for writ of habeas corpus must allege facts concerning the applicant's commitment or detention) and 28 U.S.C. §2255 (motions to vacate a sentence brought under §2255 are collateral attacks upon the imposition of a prisoner's sentence). Because the petitioner herein is seeking to have his convictions vacated, he is seeking §2255 relief, not §2241 relief. See In re Jones, 226 F.3d 328 (4th Cir. 2000).

However, despite the fact that a §2255 petition is the proper vehicle for challenging a conviction or the imposition of a sentence, a petitioner is entitled to file a §2241 petition if he can demonstrate that §2255 is an inadequate or ineffective remedy. In this respect, the Fourth Circuit has concluded that:

> §2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot

9

satisfy the gate-keeping provisions of §2255 because the new rule is not one of constitutional law.[8]

Jones, 226 F.3d at 333-34.

In this case, as noted *supra*, petitioner is not challenging the execution of his sentence, but instead, is challenging the legality of his convictions. In particular, he is alleging that because he was not provided with a "pretransfer hearing" before being taken into federal custody, he is actually innocent of the charged offenses and his detention is unconstitutional.

Although the petitioner attempts to raise the savings clause, it is clear that he is not entitled to its application. In the instant case, even if the petitioner satisfied the first and the third elements of Jones, violations of Title 21, U.S.C. §841 remain criminal offenses, and therefore the petitioner cannot satisfy the second element of Jones. Consequently, the petitioner has not demonstrated that §2255 is an inadequate or ineffective remedy, and he has improperly filed a §2241 petition.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss (Dkt.# 8) be **GRANTED** and that petitioner's petition be **DENIED** and **DISMISSED with prejudice.**

Further, the undersigned also recommends that petitioner's pending Motion for Order of Summary Judgment (Dkt.# 14) be **DENIED as moot.**

Within **fourteen (14) days** after being served with a copy of this recommendation, **or by December 2, 2015,** any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A

---

[8] The "gatekeeping" requirements provide that an individual may only file a second or successive §2255 motion if the claim sought to be raised presents:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: November 18, 2015

<u>/s/ James E. Seibert</u>
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE